UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:05CV-84-R


PATRICIA WARD-SCHUMANN                                                      PLAINTIFF

v.

MEDIACOM COMMUNICATIONS CORPORATION and
MEDIACOM SOUTHEAST LLC                                              DEFENDANTS


## MEMORANDUM OPINION

This matter is before the Court on motion for summary judgment (Dkt. # 13) of

Defendants Mediacom Communications Corporation and Mediacom Southeast LLC

("Mediacom").  Plaintiff Patricia Ward-Schumann ("Ward-Schumann") responded (Dkt. # 16),

Defendant replied (Dkt. # 19), and this matter is now ripe for adjudication.  For the reasons that

follow, the Court **GRANTS** the Defendants' motion.

## BACKGROUND

Plaintiff Patricia Ward-Schumann was employed by Mediacom as a door-to-door

salesperson, specifically selling cable television and internet services in Southern Illinois and

Western Kentucky.  She worked for that company from 2001 until February 6, 2004, when her

employment was terminated.  Her complaint, filed in Marshall Circuit Court, alleges that she was

terminated in violation of the Kentucky Civil Rights Act, KRS 344.040.  Specifically, it alleges

that she was terminated "because of her gender and in retaliation for her complaints of gender

discrimination."  (Dkt. # 1, Attachment #1, at ¶ 9).  It further states that the termination "is part

of a pattern and practice of discrimination against females" by the Defendants.  (*Id.* at ¶ 10).  It

alleges that the Defendants "acted with oppression and malice against Plaintiff," and therefore seeks punitive damages. (*Id.* at ¶ 11). It states that Plaintiff's injuries include "humiliation, embarrassment, anxiety, and stress" and that she "has suffered a loss to her reputation which affects her ability to find a suitable position in the future." (*Id.* at ¶ 12). The complaint also seeks compensation for expenses incurred in finding new employment, "out of pocket losses on the job due to her gender, including but not limited to gasoline and automobile expenses," lost wages, lost benefits, and attorney fees. (*Id.* at ¶¶ 13-15).

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence. To support his position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere

existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996).

## ANALYSIS

Although Ms. Ward-Schumann's complaint alleges a violation of the Kentucky Civil Rights Act, the Kentucky Supreme Court has said that courts applying that Act must interpret it in consonance with Title VII of the Civil Rights Act of 1964.  *See Bank One, Ky., N.A. v. Murphy*, 52 S.W.3d 540, 544 (Ky. 2001); *Ammerman v. Bd. of Educ. of Nicholas County*, 30 S.W.3d 793, 797-98 (Ky. 2000); *Brewer v. Hillard*, 15 S.W.3d 1, 10-11 (Ky. App. 1999).  The elements of a *prima facie* discrimination claim under the KCRA are the same as those for such a claim brought under Title VII.  *Talley v. Bravo Pitino Restaurant*, 61 F.3d 1241, 1250 (6th Cir. 1995).  Therefore, the Court will look to case law interpreting and applying Title VII in its evaluation of Plaintiff's complaint.

Because the record does not reveal any direct evidence of discrimination, Ms. Ward-Schumann must rely on the burden-shifting scheme first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined by *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), to prove her discrimination claim.  *Farmer v. Cleveland Public Power*, 295 F.3d 593, 602 (6th Cir. 2002); *see also Turner v. The Pendennis Club*, 19 S.W.3d 117, 119-20 (Ky. App. 2000); *Ky. Ctr. for the Arts v. Handley*, 827 S.W.2d 697, 699 (Ky. App. 1991).  Under this framework, a plaintiff alleging sexual discrimination has the initial burden of establishing a *prima facie* case of intentional sexual discrimination in employment and/or

retaliation.  *Green*, 411 U.S. at 803.  To meet this relatively easy burden, the plaintiff must

establish that (1) she is a member of a protected class; (2) she was qualified for the position; (3)

she suffered an adverse employment action; and (4) she was replaced by a person outside her

protected class, or a person outside her protected class was treated more favorably than she was.

*Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 538-39 (6th Cir. 2002); *Braithwaite v. The

Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001).

   If the plaintiff is able to establish a *prima facie* case, there arises a presumption of

discrimination, after which the employer has a "burden of articulation" which requires it to

articulate a legitimate nondiscriminatory reason for its action.  *Id.*; *Logan v. Denny's, Inc.*, 259

F.3d 558, 567 (6th Cir. 2001).  If the employer carries its burden, then the burden shifts back to

the plaintiff to prove by a preponderance of the evidence that the articulated reason was actually

a pretext for discrimination.  *Logan*, 259 F.3d at 567; *Braithwaite*, 258 F.3d at 493.  A plaintiff

can establish pretext by showing that (1) the stated reason had no basis in fact; (2) the stated

reason was not the actual reason; or (3) the stated reason was insufficient to explain the

employer's action.  *Logan*, 259 F.3d at 567 (citing *Wheeler v. McKinley Enters.*, 937 F.2d 1158,

1162 (6th Cir. 1991)).  Pretext cannot be shown unless the plaintiff proves both that the reason

was false and that discrimination was the real reason.  *Id.* (quoting *St Mary's Honor Ctr. v.

Hicks*, 509 U.S. 502, 515 (1993)).  This burden-shifting analysis will apply both to Plaintiff's

discrimination claim and her retaliation claim.

**Discrimination**

   The parties agree that Ms. Ward-Schumann has established the first element of her *prima

facie* case – she is female.  Defendants argue that she has failed to meet her burden as to the

4

other three elements; i.e., that she suffered an adverse employment action, that she was qualified

for her position, and that similarly-situated employees who were not members of her protected

class were treated more favorably.  As an initial matter, the Court notes that "[t]he prima facie

requirement for making a Title VII claim is not onerous ... and poses a burden easily met."  *Cline*

*v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000) (internal citations and quotation

marks omitted) (quoting *Burdine*, 450 U.S. at 253, and *Wrenn v. Gould*, 808 F.2d 493, 500 (6th

Cir. 1987)).

Plaintiff asserts that she "suffered [an] adverse employment action when she was denied

use of a company vehicle and a gasoline card."  (Dkt. # 16, at 8).  In response, Defendants do not

dispute that Plaintiff was denied the use of a company vehicle and a gasoline card; rather, they

argue that this denial does not constitute an adverse employment action.  For an employment

action to be considered adverse, it must constitute "a materially adverse change in employment."

*Logan*, 259 F.3d 558, 567.  Defendants correctly observe that such a change usually includes "a

decrease in wage or salary, a less distinguished title, a material loss of benefits, significanlty

diminished material responsibilities, or other indices that might be unique to a particular

situation."  *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999).  The issue, then, is

whether the denial of use of a company gas card and truck could constitute "other indices" of

adverse employment action.  To meet the standard, a "change in employment conditions 'must

be more disruptive than a mere inconvenience or an alteration of job responsibilities.' [*Kocsis v.*

*Multi-Care Mgmt., Inc.*, 97 F.3d 876,] at 886. (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*,

993 F.2d 132, 136 (7th Cir.1993)).  'The Sixth Circuit has consistently held that de minimis

employment actions are not materially adverse and, thus, not actionable.' *Bowman v. Shawnee*

5

*State Univ.*, 220 F.3d 456, 462 (6th Cir.2000)." *Mitchell v. Vanderbilt University*, 389 F.3d 177, 182 (holding that, inter alia, reduction in lab space, deprivation of graduate assistant, revocation of mentor status, and removal from director position did not, individually or collectively, constitute adverse employment action(s)).  Further, the Sixth Circuit has held that the failure to provide new equipment and assignment to older vehicles does not constitute an adverse employment action.  *Virostek v. Liberty Twp. Police Dept./Trustees*, 14 Fed. Appx. 493, 503-04, 2001 WL 814933, at *6-7 (6th Cir. 2001).  However, the actions alleged by Ms. Ward-Schumann go beyond simply providing less desirable equipment, or even no equipment at all. The impact of not being provided with a company truck and gas card is not merely inconvenient; it precluded Ms. Ward-Schumann from performing pole installations (and therefore hindered her ability to make sales that would have required such installations) and, perhaps more importantly, required her to bear the costs of the wear and tear on her personal vehicle and, possibly, to pay for her own gasoline.[1]  Further, the issue of pole installations is directly related to Plaintiff's ultimate termination from the company in that Defendant claims that it terminated her because she was not meeting her sales quotas.  *See Potter v. Goodwill Indus. of Cleveland* 518 F.2d 864 (6th Cir. 1975).  For these reasons, the Court finds that the acts of failing to provide Plaintiff a gas card and a company vehicle, *in this context*, constitute an adverse employment action.

The next prong of the *prima facie* case requires that Ms. Ward-Schumann demonstrate that she was qualified for her position.  Defendant argues that Plaintiff "admits that she has no evidence to support [a claim] that she was meeting her required sales quota for her position."

---

[1]The record on this point is not entirely clear; although Plaintiff was clearly not given a gas card, she does not state directly whether she was compensated for gasoline or not. However, the affidavit of Marsha Walker, Exhibit E to Plaintiff's Response, does so aver.

(Reply, Dkt. # 19, at 2).  Defendant references warnings allegedly given to Plaintiff in April, June and August of 2003 regarding her failure to meet sales quotas.  (*Id.*)  In her response memorandum, Plaintiff argues that she was qualified because she "had thirteen years['] experience in cable sales prior to being hired at Mediacom ... and had performed pole installations with a previous employer" and that she "received a good review in 2002 from Mediacom showing that she was more than qualified for the job as sales representative at Mediacom."  An event that precipitates the adverse employment action of prong three cannot be used as evidence that the employee was unqualified.  *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000) ("[W]hen assessing whether plaintiff has [shown she was qualified] at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff.").  Those warnings may indicate poor performance on the part of Ms. Ward-Schumann, but they do not alone indicate that she was not *qualified* to occupy her position.

Finally, Plaintiff must meet the fourth element by demonstrating that similarly-situated male employees were treated differently with respect to the assignment of trucks and gas cards.  Two employees who were also salespeople and who did have access to trucks and gas cards were Mr. Hines and Mr. Spiller, both men.  Defendant argues that the male employees were not similarly-situated because they performed "pole installations" and Plaintiff did not.  Defendant states that "the decision was made to allow Mr. Hines and Mr. Spiller to use trucks with ladders because they were performing pole installations, in addition to making door to door sales."  (Motion, Dkt. # 13, at 5).  It further states that "Mr. Spiller was allowed to use one of the

vehicles because he was assigned to make door to door sales in the Southern Illinois region, and was performing his own installations." (*Id.*) It also avers that "[w]hen Mr. Hines and Mr. Spiller began to fail to meet their sales quotas, Ms. Westerman took the vehicles away from them." (*Id.*) Defendant, then, argues that the male employees in question were not similarly-situated to Plaintiff in that their job duties included installations that required the use of a long ladder (and, therefore a truck on which to carry the ladder). Although Ms. Ward-Schumann asserts that she frequently requested to be assigned a truck and that she "never refused ladder certification" and "was not asked if [she] wanted ladder certification," she also never states that she requested to add pole installations to her job duties. (Affidavit, Exhibit A to Plaintiff's Response, at ¶¶ 2-3.) Further, she admits that from sometime in the summer of 2003 until nearly the end of that calendar year, she and another female had the use of a truck. (*Id.* at ¶ 8.) She states that they were given the truck because they were working in Southern Illinois, a significant distance from their home areas, and "primarily because there were certain items that [they] had to haul for which a truck was required." (*Id.* at ¶ 8.) For these reasons, Plaintiff has failed to make out the fourth prong of her *prima facie* case because she has not presented evidence of similarly-situated employees who were not members of her protected class that were treated differently than she was. Rather, the record indicates that Defendant assigned the trucks on the basis of need, depending on the employee's job requirements.

Because Ms. Ward-Schumann has failed to make out her *prima facie* case, Defendant is entitled to summary judgment on her discrimination claim.

**Retaliation**

Ms. Ward-Schumann also claims that she suffered retaliation for her complaints about

gender discrimination in her workplace.  Such a claim requires proof of four elements: "(1) that plaintiff engaged in an activity protected by Title VII; (2) that the exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action."  *Wrenn v. Gould*, 808 F.2d 493 (citing *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982)); *see also Harrison v. Metropolitan Gov't of Nashville and Davidson County, Tenn.*, 80 F.3d 1107, 1118 (6th Cir. 1996) and *Allen v. Michigan Dept. of Corrections*, 165 F.3d 405, 412 (6th Cir. 1999).  Defendant concedes that Plaintiff engaged in protected conduct, that it knew of the conduct, and that it ultimately took adverse action against Plaintiff (i.e., terminated her).  With respect to the causation element, Plaintiff relies on circumstantial evidence, "from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not [engaged in the protected conduct]."  *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).  "Although no one factor is dispositive in establishing a causal connection, evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation."  *Id.*

        In this case, the record indicates that Plaintiff was not treated differently from similarly situated employees.  Two other employees were terminated around the same time that Plaintiff was: Mr. Hines and Mr. Spiller, both male, were terminated for failing to meet their minimum sales quotas.  In response, Plaintiff argues that Mr. Hines was not terminated until three months after she was, and she argues that the fact that Mr. Spiller was terminated approximately one year before Plaintiff means that he is not similarly situated to her.  Neither of these arguments

9

are availing distinctions between Plaintiff and the male employees; the three-month difference between Plaintiff's termination date and Mr. Hines' is essentially *de minimis*, and she provides no explanation for *how* the one-year difference between her termination and Mr. Spiller's caused them to be differently-situated with respect to being terminated for failure to meet their quotas. The record indicates that Defendant followed essentially the same procedures with respect to Plaintiff and the male employees: a series of warnings and meetings, and then ultimately termination.

For these reasons, the Court finds that Plaintiff has failed to present a causal connection between her protected conduct and Defendant's decision to terminate her.  Rather than supporting an inference that the termination was caused by the protected conduct, the evidence leads to the conclusion that Plaintiff's continuing failure to meet her sales goals were the reason for her termination.

## CONCLUSION

For the reasons outlined above, this Court concludes that Defendant is entitled to summary judgment as a matter of law on both the claim for discrimination and the claim for retaliation.  Defendant's motion for summary judgment will therefore be **GRANTED** and this case **DISMISSED**.

An appropriate order shall issue.